NO.  94-084

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN THE MATTER OF

HOWARD LARRY PHILLIPS,

Petitioner and Appellant,

-vs-

CITY OF LIVINGSTON, a Municipal
Corporation, BILL R. DENNIS, RUTH
EGGAR, LYLE GILLARD, LEE HARRIS,
and PATE MIKESELL, as member of
and constituting the City Council
of the City of Livingston, Montana,

Respondents and Respondents.



FILED

NOV 29 1994

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Sixth Judicial District,
In and for the County of Park,
The Honorable Byron L. Robb, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

William F. Frazier, Jr.; Swandal, Douglass, Frazier
& Cole, Livingston, Montana

For Respondent:

Robert L. Jovick, Attorney at Law, Livingston,
Montana

For Amicus Curiae:

Michael J. San Souci, Bozeman, Montana, Attorney
for Montana State Council of Professional
Firefighters, International Association of
Firefighters and Local No. 630, IAFF

Submitted on Briefs:  September 15, 1994

Decided:  November 29, 1994

Filed:

_____
Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from an order of the District Court for the Sixth Judicial District, Park County, denying Howard Larry Phillips' (Phillips) petition for a writ of mandamus. We reverse.

We restate the issues raised as follows:

1. Do the city of Livingston's termination hearing procedures supersede statutory termination procedures for firefighters established by the state legislature?

2. Is Phillips entitled to the relief provided by a writ of mandamus?

The city of Livingston (Livingston) employed Phillips as a full time firefighter beginning October 16, 1989. On October 6, 1993, Kenton G. Griffin, Livingston's city manager, sent Phillips notice that there would be a termination hearing the next day regarding Phillips' employment. The notice informed Phillips that he was suspended with pay because of allegations that he contrived to steal $20 from the local Firefighters Association. The notice stated that the alleged theft would be addressed at the termination hearing. Later the same day, Griffin sent Phillips an addendum stating that the termination hearing would be postponed until October 8, 1993 because two additional allegations would be discussed. These allegations were that Phillips had misappropriated a flashlight and carabiners.

Phillips objected to having the hearing on such short notice

2

and **requested a** continuance.  On October 8, 1993, Griffin sent Phillips a letter stating that his request for a continuance of the hearing was granted, extending the hearing date to October 14, 1993.  The notice added an allegation that Phillips stole hemostats, and informed him that this allegation would also be considered at the hearing.

The termination hearing was held on October 14, 1993.  Griffin presided at the hearing. Phillips' counsel objected to the hearing because it did not conform to the mandates of § 7-33-4124, MCA, which requires firefighters' termination hearings to be held before the city council or commission.  Griffin overruled Phillips' objection and, on October 18, 1993, Griffin sent Phillips his formal notice of termination.  Griffin, acting as the Livingston city manager, unilaterally decided to terminate Phillips.

On October 22, 1993, Phillips petitioned the District Court for a writ of mandamus to command his reinstatement as a firefighter.  On January 12, 1994, the court issued its order denying Phillips' petition.  Phillips moved for reconsideration. On January 24, 1994, the court reaffirmed its previous decision. From these orders, Phillips appeals.

I

Do the city of Livingston's termination hearing procedures supersede statutory termination procedures for firefighters established by the state legislature?

For clarity, we note at the outset that although Livingston has adopted the commission-manager form of government, Livingston's

city commission refers to itself as the Livingston city council. Livingston's policy and procedures manual, which the Livingston city council adopted by resolution number 2175 on June 18, 1990, states that the city manager shall hold a termination hearing prior to any discharge, and that only the city manager may discharge an employee. This procedure conflicts with a Montana statute regarding the discharge of firefighters which provides:

> Suspension procedure. (1) In all cases of suspension the person suspended must be furnished with a copy of the charge against him, in writing, setting forth reasons for the suspension. Such charges must be presented to the next meeting of the council or commission and a hearing had thereon, when the suspended member of the fire department may appear in person or by counsel and make his defense to said charges.
> (2) Should the charges not be presented to the next meeting of the council or commission after the suspension or should the charges be found not proven by the council or commission, the suspended person shall be reinstated and be entitled to his usual compensation for the time so suspended.
> (3) If such charges are found proven by the council or commission, the council or commission, by a vote of a majority of the whole council or commission, may impose such penalty as it shall determine the offense warrants, either in the continuation of the suspension for a limited time or in the removal of the suspended person from the fire department.

Section 7-33-4124, MCA, (emphasis added).

We examined a city's attempt to supersede Montana statutes dealing with municipal fire departments in Billings Firefighters Local 521 v. City of Billings (1985), 214 Mont. 481, 694 P.2d 1335. In that case, the city of Billings passed an ordinance which purported to supersede almost all of Title 7, Chapter 33, Part 41, MCA, regarding municipal fire departments. Billings Firefighters, 694 P.2d at 1337. We examined § 7-1-114(f), MCA, which states that

4

local government powers are limited by any law requiring local government to carry out a function or provide any service. Billings Firefighters, 694 P.2d at 1339-40. We held that the Billings ordinance was deficient because the ordinance did not require the city to provide an essential service; specifically, the ordinance did not provide for the mandatory creation of a municipal fire department which is required of every city in § 7-33-4101, MCA. Billings Firefighters, 694 P.2d at 1339-40. In reaching our conclusion that the Billings ordinance was void, we expressly noted that we were not ruling upon other possible conflicts between the ordinance, other sections of Title 7, Chapter 33, Part 41, MCA, and § 7-1-114(f), MCA. Billinas Firefiahters, 694 P.2d at 1340. We now have reason to make such a ruling regarding Livingston's policy and procedures manual.

In the present case, Livingston attempted to supersede the statutory duty of the city council to hold a hearing before it decides to terminate a suspended firefighter. We hold that this violates § 7-1-114, MCA, which states in relevant part:

> (1) A local government with self-government powers is subject to the following provisions:
>
> . . .
>
> (f) Any law directing or requiring a local government r any officer or employee of a local government to catr any function or provide any service . . . .
> (2) These provisions are a prohibition on the self-government unit acting other than as provided. [Emphasis added.]

Section 7-33-4124, MCA, clearly requires the Livingston city council to hold a hearing at its next meeting following the

suspension of a municipal firefighter. The council failed to perform this function. Livingston's policy and procedures manual essentially has the city manager perform the council's function. As applied to firefighters, this policy violates the limitations placed on local governments' powers by § 7-1-114(f), MCA. Thus, as the policy is applied to city firefighters, it is void.

Livingston argues that the termination procedures provided in the city manual validly supersede those provided in § 7-33-4124, MCA, because those termination procedures were included in Livingston's collective bargaining agreement with the union. In support of its position, Livingston cites § 39-31-306(3), MCA, which states in part: "An agreement between the public employer and a labor organization must be valid and enforced under its terms when entered into in accordance with the provisions of this chapter. . . ."

Livingston also cites a Kansas case in support of its argument. In Gorham v. City of Kansas City (Kan. 1979), 590 P.2d 1051, 1056, the Kansas Supreme Court held that terminated policemen waived their due process rights to a pre-termination hearing because their union had entered into a collective bargaining agreement with a grievance procedure. We note that Phillips was provided with notice of the charges. against him before the city manager conducted the termination hearing. However, the issue in this case does not involve the denial of constitutional due process. Gorham is distinguishable because there was no specific statutory right to a termination hearing at issue, and the

6

bargaining agreement here is different from that in <u>Gorham.</u>

We have not addressed the issue of whether a laborer waives the right to due process, or a statutorily mandated hearing, by entering into a collective bargaining agreement; nor do we need to today. A thorough examination of the collective bargaining agreement makes it possible to give effect to both § 7-33-4124, MCA, and § 39-31-306(3), MCA. Section 1-Z-101, MCA, states in relevant part that "[w]here there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all."

Livingston's policy and procedures manual provides that the city manager shall hold a termination hearing prior to any discharge, and that only the city manager may discharge an employee. Article V of the collective bargaining agreement is entitled "Policy and Procedures." Section 5.1 of the agreement states: "The Union agrees to adopt the City of Livingston[']s Policy and Procedures manuals where not in conflict with this Agreement." Article XIII of the collective bargaining agreement is entitled "Discipline and Discharge." Section 13.3 states: "The employer may suspend an employee with pay pending the final decision as to the appropriate discipline or the overturning of the discipline <u>by the appropriate authority</u>" (emphasis added).

The appropriate authority for administering discipline in this case was the city council, pursuant to § 7-33-4124, MCA. Thus, the section of Livingston's policy and procedures manual which vests the city manager with the power to discharge firefighters conflicts

7

with § 13.3 of the collective bargaining agreement.  Therefore, in accordance with § 5.1 of the collective bargaining agreement, Phillips' union did not adopt Livingston's policy and procedures manual where it deals with discipline and discharge of city employees.  We hold that the city of Livingston's termination hearing procedures do not validly supersede those procedures established by the state legislature for the termination of firefighters.

II

Is Phillips entitled to the relief provided by a writ of mandamus?

A district court's denial of a writ of mandamus is a matter of legal interpretation; we review district courts' legal interpretations as to whether they are correct.  Rocky Mountain Timberlands, Inc. v. Lund (Mont. 1994), 877 P.2d 1018, 1020-21, 51 St.Rep. 653, 654: citing Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 803 P.2d 601.

Section 27-26-102, MCA, provides as follows:

> (1) A writ of mandamus may be issued by the supreme court or the district court or any judge of the district court to any lower tribunal, corporation, board, or person to compel the performance of an act that the law specially enjoins as a duty resulting from an office, trust, or station <u>or to compel the admission of a party to the use and enioyment of a risht or office to which the party is entitled and from which the party is unlawfully precluded by the lower tribunal, corporation, board, or person.</u>
> (2) The writ must be issued in all cases in which there is not a plain, speedy, and adequate remedy in the ordinary course of law.  [Emphasis added.]

We have stated that the writ of mandamus will lie where, in

8

addition to there being no plain and adequate remedy in the ordinary course of law, the party seeking to invoke the writ is entitled to the performance of a clear legal duty against whom the writ is directed. State ex rel. Neuhausen v. Nachtsheim (1992), 253 Mont. 296, 299, 833 P.2d 201, 203; citing State ex rel. Galloway v. City of Great Falls (1984), 211 Mont. 354, 358, 684 P.2d 495, 497.

Here, there is no question that a clear legal duty exists. Under § 7-33-4124, MCA, the Livingston city council is directed to conduct a termination hearing at its next meeting following a firefighter's suspension. Since they failed to do so, the relief specifically provided by § 7-33-4124(2), MCA, is Phillips' reinstatement to his former position.

"As a general rule, before mandamus will issue to a public officer, board or municipality, a demand for the performance of the act sought to be compelled is required." Liebman v. Brunell (1984), 212 Mont. 459, 460, 689 P.2d 248; citing State ex rel. School District No. 29, Flathead County v. Cooney (1936), 102 Mont. 521, 59 P.2d 48. Phillips has demanded the Livingston city council to hold a termination hearing since the city manager first presided over Phillips' termination hearing. Thus, he has met the demand requirement.

Livingston argues that mandamus is inappropriate because Phillips has not exhausted his avenues of remedy under the grievance procedure contained in the collective bargaining agreement. In support of its position, Livingston cites Lueck v.

9

United Parcel Service (1993), 258 Mont. 2, 851 P.2d 1041. In Lueck, we affirmed the district court's summary judgment and dismissal of a former United Parcel Service employee's retaliatory discharge claim because he failed to utilize the grievance procedures available in his union's collective bargaining agreement with UPS. Lueck, 851 P.2d at 1044-45.

The present case, however, is distinguishable from Lueck. Lueck did not involve an application for writ of mandamus. Further, there was neither a clear statutory duty for a legislative body to take action, nor was there a clear and mandatory statutory remedy provided for the discharged employee. Here, § 7-33-4124(1), MCA, clearly establishes that the Livingston city council has the duty to hold a termination hearing after the suspension of a firefighter. Section 7-33-4124(2), MCA, just as clearly provides that the remedy for the council's failure to hold such a hearing is Phillips' reinstatement to his former position.

Finally, mandamus is the proper remedy in this case because Phillips does not have a plain, adequate, and speedy remedy. Section 27-26-102(2), MCA. Phillips' remedy for the denial of the process provided in § 7-33-4124(1), MCA, is clear. Section 7-33-4124(2), MCA, provides that if the city council or commission does not hold a termination proceeding following a firefighter's suspension, the firefighter is entitled to reinstatement and pay for the term the firefighter was suspended. We hold that the District Court incorrectly interpreted the law and erred by failing to issue the writ of mandamus.

10

For the reasons previously stated, we reverse the judgment of the District Court and remand for proceedings consistent with this opinion.

/s/ John Conway Harrison
Justice

We concur:

/s/ J. A. Turnage
Chief Justice

/s/ Karla M. Gray

/s/ William E. Hunt

/s/ [signature]

/s/ Terry N. Trieweiler

/s/ [signature]
Justices

November 29, 1994

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

William F. Frazier, Jr.
SWANDAL, DOUGLASS, FRAZIER & COLE
206 East Callender
Livingston, MT 59047

Robert L. Jovick
Attorney at Law
P. 0. Box 1245
Livingston, MT 59047

Matthew Flanick
Attorney at Law
414 East Callender
Livingston, MT 59047

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy